## Berks County Children and Youth Services v. Heydt

*Ann Marie Cucinotta,* for plaintiff.
*John A. Hoffert Jr.,* for defendant.

SCHMEHL, *J.,* October 22, 1996—This matter comes before the court on Berks County Children & Youth Services' exceptions to findings of fact, conclusions of law and recommendation of the domestic relations hearing officer.

A complaint for child support was filed against the defendant on February 15, 1995. Support was sought for one child, Melinda Heydt, born on April 9, 1979. The complaint was filed by Berks County Children & Youth Services for support for the time the child was in placement through the agency. The matter went before a conference officer on March 24, 1995, and then went before the domestic relations hearing officer on May 4, 1995. The hearing officer's report was filed on April 15, 1996; her comments indicate that the defendant appeared with his attorney, and Richard Way appeared as a representative of the plaintiff/agency. No formal testimony was taken, but the record included exhibit 1, a copy of a recent pay stub for the defendant (exhibit 1) contained in the domestic relations working

file. The record was held open so that defendant could produce documentation to confirm the types of benefits the child received on account of her mother's death. According to the hearing officer's report, a little over five months after the hearing, the defendant forwarded to the domestic relations office a document prepared by the social security administration which provided in part that beginning in December 1994 the full monthly social security benefit for the child was $527.20, and that "the benefits that are being paid are survivor benefits since Mrs. Heydt passed away." (exhibit 2.) Another document (exhibit 3), a memorandum from Berks County Children & Youth Services (hereinafter BCCYS) requesting suspension of the order effective September 29, 1995, because the child had left the care of the agency, was also admitted.

The issue facing the hearing officer was whether or not the defendant was entitled to a credit against his support obligation by virtue of the benefits received by the child on account of her mother's death. The hearing officer found that the defendant was entitled to a credit for the entire amount of his monthly support obligation for each month in which BCCYS received the full monthly survivor benefit of $527 for the child. The hearing officer decided, under *Children & Youth Services of Allegheny County v. Chorgo,* 341 Pa. Super. 512, 491 A.2d 1374 (1985), and social security statutes and regulations, that if the child had been living with the defendant and not in placement through BCCYS, defendant would have had control over the money and no order would have been entered, and thus his obligation should be relieved for each and every month in which BCCYS received the survivor benefits. The

hearing officer noted that BCCYS would need to review its records to determine whether there was any gap in the receipt of the social security benefits for the period of January 18, 1985 (the date of placement) to September 29, 1995 (the date of release from placement), and if there was any gap that BCCYS request a conference for the purpose of establishing defendant's arrears for such gaps. The hearing officer recommended that if there were any arrears owing they be payable at $10 per week.

BCCYS filed exceptions to the recommendation of the domestic relations hearing officer. The exceptions argue that the hearing officer, by her recommendation, extended a "credit to defendant against his support obligation for survivor benefits paid to Melinda on account of his wife's death," and that the defendant is not entitled to such a credit, as he is not currently receiving the benefit and it is not included in his net monthly income. BCCYS requests the survivor benefits not be credited to the defendant and that an order be entered against the defendant in the amount of $98.16 per week. It was agreed and ordered that oral argument would be waived and the matter would be decided on the documents filed of record.

The hearing officer, citing social security statutes and regulations, stated that unmarried children under the age of 18 may receive social security benefits on account of the death of a parent if the parent worked, paid social security taxes and earned sufficient credits to entitle the child to such benefits. Under *Chorgo* and also *Preston v. Preston,* 435 Pa. Super. 459, 646 A.2d 1186 (1994), since the benefits involved in this matter were not occasioned as a result of the employment of the obligor, but as a result of the employment of

the child's deceased mother, the defendant should not receive any kind of credit. BCCYS received the benefits on behalf of the child during placement, and thus defendant no longer had control over the income. To attribute it to him as income with the result of lowering his support obligation is akin to forcing the child to pay for her own support. Each parent is required to contribute a share of the child's reasonable needs proportional to that parent's share of the combined net income (Pa.R.C.P. 1910.16-5 and explanatory comment following). To allow the defendant to not pay support because of social security benefits the child received as a result of her *mother's* death would be somewhat akin to allowing an obligor to be relieved of paying support because the other party was providing money to support the child.

The defendant would have this court rely upon *Children & Youth Services v. Chorgo* in holding that the exceptions should be dismissed. In considering this argument the court notes that an important distinction is made within *Chorgo* regarding the source which occasioned social security payments made to a child. In *Chorgo,* as here, a Children & Youth Services agency commenced the action to enforce a support order and compel payment of arrearages. However, in *Chorgo* the defendant/obligor, through his employment, occasioned the benefits paid to the child, whereas in this case, it was the death of the child's mother which occasioned the social security payments. The Superior Court in *Chorgo* carefully considered two things in holding that a "credit should be given for social security payments made directly to a child when the *obligor's* employment occasioned the benefits." *Id.* at 519, 491 A.2d at 1378. (emphasis added)

"First, since the obligor has paid in advance for these benefits over the years (albeit mandatorily), they should be recognized as the fruits of his labor. Second, since the child will still receive the same amount of support which the court has decided he should have, it does not matter to that party that the obligor is given credit." *Id.* at 518, 491 A.2d at 1377.

Nothing in the reasoning enunciated in *Chorgo* supports a finding by this court that the defendant should be given a credit for the social security payments made in this matter.

The hearing officer found that based upon exhibit 1, the defendant's pay stub, and his statement that he had an IRS refund in the amount of $2,000, defendant's net weekly income was $530.62 (weekly net of $492.16 plus $38.46, a weekly share of his IRS refund). She assigned to BCCYS a zero earning capacity and calculated defendant's guideline support obligation to be $98.16 per week. No exception was raised to this amount, and thus, the court will use the hearing officer's guideline in making an order in this matter.[1]

For the foregoing reasons, the court enters the following order:

## ORDER

And now, October 22, 1996, based upon the court's determination that plaintiff's monthly net income is zero, and defendant's monthly net income is $2,297.58, it is hereby ordered that:

___

1. On page 3 of her report, the hearing officer found defendant may have a higher obligation if calculated on the total household income (defendant's income plus monthly survivor benefits).

(1) Defendant pay to the domestic relations section, court of common pleas, $425 per month payable at $98 per week for the support of Melinda Heydt (d.o.b. 4/9/79). In addition, defendant shall pay $10 per week towards accumulated arrears for a total weekly payment of $108.

(2) This order shall cover only the period of time during which the child was in placement through BCCYS, January 18, 1995 to September 29, 1995.

(3) The effective date of this order is January 18, 1995.

Defendant shall be responsible for 100 percent of the unreimbursed medical expenses for his daughter for the period of January 18, 1995 to September 29, 1995.

The parties must within seven days inform the domestic relations section and the other parties, in writing, of any material change in circumstances relevant to the level of support or the administration of the support order, including, but not limited to, loss or change of income or employment and change of personal address or change of address of any child receiving support. A party who willfully fails to report a material change in circumstances may be adjudged in contempt of court, and may be fined or imprisoned.

Pennsylvania law provides that all support orders shall be reviewed at least once every three years if such a review is requested by one of the parties. If you wish to request a review and adjustment of your order, you must do the following: an unrepresented person who wants to modify a support order should

file a petition for modification with the domestic relations section docketing division.

A mandatory income attachment will issue unless the defendant is not in arrears in payment in an amount equal to or greater than one month's support obligation and (1) the court finds that there is good cause not to require immediate income withholding; or (2) a written agreement is reached between the parties which provides for an alternate arrangement.

Delinquent arrearage balances may be reported to credit agencies. On and after the date it is due, each unpaid support payment shall constitute a judgment against you.

Nonpayment of support may result in the loss of the delinquent payor's professional license. State lottery winnings may be intercepted to pay delinquent support obligations.

Payments must be made by cash (in office window payment), check (personal or certified), or money order. All checks and money orders must be made payable to "Domestic Relations Section," and mailed to Domestic Relations Section at 633 Court Street, 6th Floor, Reading, PA 19601. Each payment must bear your case number in order to be processed. Do not send cash by mail. Each payment must be accompanied by a $.50 service fee.

It is further ordered that, upon defendant's failure to comply with this order, defendant may be ordered to appear before the court for a contempt hearing; defendant's wages, salary, commissions, and/or income may be attached in accordance with law. Defendant is responsible for court costs and fees.