J-A29022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF JAMES FRANCIS VOSSBURG, SR., ALSO KNOWN AS JAMES F. VOSSBURG, SR., DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| KATHY VOSSBURG | |
| Appellee | |
| v. | |
| RANDY J. VOSSBURG, INDIVIDUALLY AND AS ADMINISTRATOR D.B.N.C.T.A., OF THE ESTATE OF JAMES F. VOSSBURG, SR., | |
| Appellant | No. 260 WDA 2014 |

Appeal from the Order entered January 14, 2014,
in the Court of Common Pleas of Clarion County,
Orphans' Court, at No(s): 21 O.C. 1997

BEFORE:  BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED NOVEMBER 06, 2014**

Randy J. Vossburg, ("Appellant"), appeals from the trial court's order which determined that he was liable to the estate of his grandfather, James Francis Vossburg, Sr., a.k.a. James F. Vossburg, Sr., (alternatively "Estate" or "Decedent"), for $21,687.68 dollars, and which removed Appellant as the Estate's administrator as a result of Appellant's violations of his fiduciary duty to the Estate.

Appellant presents the following issues for our review:

_____
* Retired Senior Judge assigned to the Superior Court.

1. Did the Orphans' Court err as a matter of law in determining that the Court Order dated December 9, 2010, served as a renewal of the statute of limitations, and also when it appears in the Court's opinion that the statute of limitations was deemed renewed by the "admission" of [Appellant's] counsel during legal argument on October 11, 2013 or in [Appellant's] "briefs"?

2. Irrespective of whether or not the acknowledgement doctrine revived the time-barred debt against [Appellant] in December 2010, did the Orphans' Court err as a matter of law in finding [Appellant] liable for repayment when the applicable two-year statute of limitations for conversion claims ran on any such revived claims in December 2012?

3. Did the Orphans' Court err as a matter of law and abuse its discretion in determining [Appellant], "is in breach of his fiduciary duty as an administrator to collect all debts of the estate" and has a conflict of interest and must be removed as administrator, when the Court based such alleged breach of duty and conflict of interest on a debt which is time-barred under Pennsylvania law?

4. Did the Orphans' Court err as a matter of law and abuse its discretion in appearing to find [Appellant] should be removed as administrator because his account "shows that [Appellant] has done absolutely nothing as administrator d.b.n.c.t.a.," when in fact the record shows substantial orders, negotiations, letters and documentation with the court in furtherance of attempts to reduce a department of public welfare lien that put any activity for said account on hold during [Appellant's] accounting?

Appellant's Brief at 10-11.

Initially, we recognize:

"Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re Estate of Presutti,* 783 A.2d 803, 805 (Pa. Super. 2001) (quoting *In re Estate of Angle,* 777 A.2d 114, 122–23 (Pa. Super. 2001)). "If the court's findings are properly supported, we may reverse its decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable."

*Owens v. Mazzei,* 847 A.2d 700, 706 (Pa. Super. 2004) (citing *In re Estate of Harrison,* 745 A.2d 676, 678–79 (Pa. Super. 2000), *appeal denied,* 563 Pa. 646, 758 A.2d 1200 (2000)).

**In re Estate of Fritts,** 906 A.2d 601, 606 (Pa. Super. 2006).

Mindful of our standard of review applicable to Appellant's issues, we carefully examined the record and found Appellant's claims of error to be unavailing. The Honorable Paul H. Millin, Senior Judge, who presided over this matter, filed a well-written opinion, which we adopt as our own, with only one departure in rationale, which we explain more fully below. Judge Millin, citing prevailing and applicable case law, cogently addressed Appellant's challenges regarding the monies Appellant owed to the Estate, Appellant's violations of his fiduciary duty regarding the Estate, and Appellant's removal as the Estate's administrator, such that further analysis by this Court would be redundant. We therefore adopt the trial court's January 14, 2014 opinion as our own in affirming the trial court's order of the same date.

Our affirmance reflects our agreement with the trial court's determination that Appellant is liable to the Decedent's estate for $21,687.68 dollars. **See In re Novosielski,** 992 A.2d 89, 104 (Pa. 2010) ("Absent extraordinary circumstances, an appellate court will not substitute its judgment for that of the fact finder."); **see Fritts, supra,** at 606 ("If the court's findings are properly supported, we may reverse its decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable."); **The Morning Call vs. Bell Atlantic-Pennsylvania, Inc.**,

761 A.2d 139, 141 (Pa. Super. 2000) ("Findings of fact made by the [trial court] will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious.").

Our only departure from the trial court's rationale is that we do not find that the March 11, 1997 order was unenforceable due to the passage of time. We find that Appellant had, and still has, a duty to comply and abide by the trial court's March 11, 1997 order directing him to "begin immediately to return the assets" to the Estate, consisting of the debt of $21,687.68 dollars "which [Appellant] concedes belongs to [Decedent]." Order, 3/11/97, at 2. *See Bullock v. Bullock,* 639 A.2d 826, 829-830 (Pa. Super. 1994) (internal citation omitted) (passage of time did not preclude a 33 year old support order from being enforced where: 1) the order was duly entered and of record; 2) "appellant's duty to provide support … had been established by court order, and his failure to comply therewith was clearly established by judicial records" such that "[u]nder these circumstances, [appellant] cannot complain that enforcement was delayed"; and 3) where the trial court did not err in enforcing the order since "[appellant's] support requirements result[ed] from a court order rather than an agreement, [such that] the trial court had the primary responsibility to implement (by operation of law) the plaintiff's right to support pursuant to the 1959 order"); *see also Miller v. Bistransky,* 679 A.2d 1300, 1302 (Pa. Super. 1996) (affirming the enforcement of a 50 year old support order despite the passage of time, and finding that the order's enforcement was not barred by

the doctrine of laches). We do not find that the cases cited by the trial court disallowing the recovery of stale claims *against* a decedent's estate to be dispositive of, or applicable in this matter, because the monies sought to be recovered are *for the benefit of, and in favor,* of the Estate. *See* Trial Court Opinion, 1/14/14, at 4-5.

Even assuming *arguendo* that Appellant's debt was subject to an expired statute of limitations, we agree with the trial court that the debt was revived by Appellant's acknowledgement of the debt. *See* Trial Court Opinion, 1/14/14, at 1-5; **See Makozy v. Makozy,** 874 A.2d 1160, 1170-1171 (Pa. Super. 2005) (acknowledgement doctrine may be invoked to toll or remove the bar regarding a statute of limitations concerning a debt where there is "[a] clear, distinct, and unequivocal acknowledgment of a debt" by the debtor "of an existing obligation, such as is consistent with a promise to pay" the debt).

Likewise, our review of the record and applicable case law comports with the trial court's determination that Appellant owed a fiduciary duty to the Estate to collect all debts that were owed to the Estate, including his own debt, and that Appellant's failure to do so constituted a violation of Appellant's fiduciary duty to the Estate, compelling Appellant's removal as the Estate's administrator. *See* Trial Court Opinion, 1/14/14, at 5-6; **see also In re Estate of Andrews,** 92 A.3d 1226, 1231 (Pa. Super. 2014) (personal representative owes estate fiduciary duty to collect the estate's assets, including any monies owed to estate); **In re Estate of Westin,** 874

A.2d 139, 143 (Pa. Super. 2005) (conflict of interest warranting removal of estate's executor was "readily apparent" where executor's law firm owed money to the estate, "the record reveals no evidence of any attempts by the executor to recover these funds for the estate," the estate "[b]y any reasonable measure, … has grounds to file a claim against [executor's law firm] to recover its assets," and the executor "would then be in the position of representing the estate, in his capacity as executor, in a claim against himself and his law firm").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2014

Circulated 10/23/2014 03:21 PM

JAN 1 5 2013

RECEIVED

JAN 1 4 2014

BY _____



IN THE COURT OF COMMON PLEAS
OF CLARION COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

In Re:                :

Estate of JAMES FRANCIS VOSSBURG,   :
SR. also known as JAMES F. VOSSBURG, :     sur NO. 21 O.C. 1997
SR.                    :
                     :

Kathy Vossburg, Petitioner      :

      v.                 :

Randy J. Vossburg, Individually and as   :
Administrator d.b.n.c.t.a, of the James F.   :
Vossburg Estate, Respondent      :



## OPINION AND ORDER OF COURT

Millin, S.J.                              January 13, 2014

### I.    Background

Kathy Vossburg ("Petitioner"), a beneficiary of the Estate of James Francis Vossburg,

Sr., brought an action against Randy J. Vossburg ("Respondent") Administrator

d.b.n.c.t.a. to file a more specific accounting of the Estate while also requesting a

hearing to resolve issues pertaining to $21,687.68 retained by Respondent from the

estate.

### II.    Issues

     a. Is the Respondent liable to the Estate for the moneys removed from the

        Estate when it was in guardianship prior to decedent's passing?

Add. 7

1

b. Is Respondent in violation of his fiduciary obligations as administrator of the Estate?

c. Do the actions of Respondent dictate that he must be removed as administrator d.b.n.c.t.a.?

### III. Facts

This case has languished in the Clarion Court system for the better part of two decades. In early 1997, documents were filed to adjudicate James Francis Vossburg, Sr. (Vossburg, Sr.) as an incapacitated person and requesting the appointment of a guardian of the estate and of the person. At the time, Vossburg, Sr. was 88 years old and recently admitted to Western Pennsylvania Psychiatric Institution in January of that year. On March 11, 1997, then-President Judge Charles Alexander ordered that James Francis Vossburg, Jr., who had been appointed Emergency Guardian, remain the guardian of Vossburg, Sr., his father. Respondent, Randy J. Vossburg, the grandson of Vossburg, Sr. and son of James Vossburg Jr., was instructed by the court to repay assets, totaling $21,687.68, which he admitted belonged to Vossburg, Sr. and which he had converted to his own use. To this date, Respondent has failed to do so.

On August 23, 1999, Vossburg, Sr. died testate. The will was properly probated on September 24 of that same year. James Vossburg, Jr., who had been guardian of his father, was appointed executor of the estate. On October 26, the decedent's surviving spouse, Katherine A. Vossburg, filed her election to take against the will of the decedent. Under the terms of the will, the named beneficiaries and their respective interests included:

| Name | Relationship | Interest |
|------|-------------|----------|
| James F. Vossburg, Jr. | Son | ¾ interest |
| Randy J. Vossburg | Grandson | 1/16 interest |
| Richard A. Vossburg | Grandson | 1/16 interest |
| Edward B. Vossburg | Grandson | 1/16 interest |
| Kathy M. Vossburg | Granddaughter | 1/16 interest |

On March 25, 2010 James Vossburg Jr., the executor of the Vossburg Sr. estate, died intestate. That same day, Randy Vossburg filed Objections to the "First and Partial Personal and Real Estate Account Relative to the Estate of the Late James F. Vossburg Sr.", which had been filed by James F. Vossburg Jr. as executor. In that account, the specific bank accounts, and the amount of money taken by Randy Vossburg during the guardianship period were specifically set forth in the account, and listed as an estate asset in the inheritance tax return and in the inventory and appraisal.

The court ruled in December that the Account, which was examined and audited by the court "that the said Account be confirmed absolutely unless exceptions are filed within ten days of the Issuance of this Order of Court ..." Respondent filed exceptions to the account, specifically referencing the paragraphs listing the moneys taken by Respondent. Prior to the hearing on the account, Respondent filed a Motion to Withdraw the Exceptions noting that "2. As a result of the review of each objection, it was subsequently determined each objection was resolved and would not be sustained." Based on the foregoing, the court entered an Order dated December 9, 2010, which stated "The Court hereby Orders and Decrees the Objections filed by Petitioner, Randy J. Vossburg, are hereby *withdrawn with prejudice*" (emphasis added).

Add.9

3

On July 10, 2013, the Respondent filed an account which showed that he had done nothing during his time as administrator d.b.n.c.t.a. On July 22, 2013 Petitioner filed Objections to the Accounting along with a Motion for a Hearing. Specifically, Petitioner requests that Respondent return the $21,687.68 that he has held in violation of court order for more than 16 years. She claims that Respondent violated his fiduciary duties and has an obligation to return that money to the estate of James F. Vossburg, Sr.

In addition, Petitioner seeks the return of two CDs held by Richard and Edward Vossburg jointly with James F. Vossburg Sr. which were cashed in January of 2000. As those parties are not named as Respondents in the instant case, that issue shall not be considered by the court at this time.

## IV. Analysis

"When an entire vacancy occurs in the office of personal representative before administration is completed, the register, in a case of intestacy, shall grant letters of administration de bonis non, and in the case of testacy, letters de bonis non cum testamento annexo, to the person or persons entitled thereto." 20 Pa.C.S.A. § 3159. An administrator is regarded as a trustee bound to apply property held by him to pay off debts and to apply the surplus according to the specific will of the testator. *Appeal of Robinett,* 36 Pa. 174, 191 (Pa. 1860). If the decedent is intestate, that administrator must follow the laws of intestacy when distributing the estate. *Id.* The order and classification of payment to creditors and other interested parties in an estate is governed by statute. That statute provides the following preferences:

(1) The costs of administration.
(2) The family exemption.

Add.10

4

(3) The costs of the decedent's funeral and burial, and the costs of medicines furnished to him within six months of his death, of medical or nursing services performed for him within that time, of hospital services including maintenance provided him within that time, of services provided under the medical assistance program provided within that time and of services performed for him by any of his employees within that time.

(4) The cost of a gravemarker.

(5) Rents for the occupancy of the decedent's residence for six months immediately prior to his death.

(5.1) Claims by the Commonwealth and the political subdivisions of the Commonwealth.

20 Pa.C.S.A. § 3392. A surviving spouse has the right under Pennsylvania law to take an election of 1/3rd of the estate. 20 Pa.C.S.A. § 2203(a). That property is limited to:

1. Property passing from the decedent by will or intestacy.

2. Income or use for the remaining life of the spouse of property conveyed by the decedent during the marriage to the extent that the decedent at the time of death had the use of the property or an interest in or power to withdraw the income therefrom.

3. Property conveyed by the decedent during his or her lifetime to the extent that the decedent at the time of death had a power to revoke the conveyance or to consume, invade, or dispose of the principal for his or her own benefit.

4. Property conveyed by the decedent during the marriage to the decedent and another or others with right of survivorship to the extent of any interest in the property that the decedent had the power at the time of his or her death unilaterally to convey absolutely or in fee.

5. Survivorship rights conveyed to a beneficiary of an annuity contract to the extent it was purchased by the decedent during the marriage and the decedent was receiving annuity payments therefrom at the time of death.

6. Property conveyed by the decedent during the marriage and within one year of death to the extent that the aggregate amount so conveyed to each donee exceeds $3,000, valued at the time of conveyance.

*Id.*

Claims against a decedent's estate can be established only by clear, convincing, and precise evidence. *In re Gadola Estate*, 188 A.2d 744, 746 (Pa. 1963); *In re Secary Estate*, 180 A.2d 572, 573 (Pa. 1962); *In re Cameron's Estate*, 130 A.2d 173, 175 (Pa. 1957). This rule applies even with greater strictness when the claim is "stale" or has languished in the court system for some time. *In re Scott's Estate*, 166 A. 558 (Pa. 1933); *Landis v. Roth*, 1 A. 49 (Pa. 1885). Pennsylvania courts "have consistently held

Add. 11

5

that claims against a decedent's estate are viewed with suspicion when they could and ordinarily would, if genuine, and reasonable time permitted, have been made in decedent's lifetime; and that all claims against a decedent's estate must be proved by evidence which is clear, direct, precise and convincing." *In re Nicolazzo's Estate*, 199 A.2d 455, 457 (Pa. 1964) *quoting In re Gadola*, 188 A.2d at 746.

    a.  The court order of March 11, 1997, standing alone, can no longer be enforced.

According to Pennsylvania statute, "orders" include decisions, decrees, and adjudications. 42 P.S. § 102. An order for a specific sum of money upon entry into the judgment index creates a lien on the real property of an individual located within the county that such order is entered. Pa.R.C.P. 3022(a). That lien continues for a period of five years unless the verdict is sooner reduced to judgment or a court awards a new trial or enters a judgment notwithstanding the verdict. *Id.* Statutes of limitations "are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience." *Kingston Coal Company v. Felton Min. Co., Inc.*, 690 A.2d 284, 288 (Pa. Super. 1997).

Randy Vossburg argued at the hearing that the court order of March 11, 1997 no longer has legal effect. Though there was some dispute over the proper statute of limitations period, regardless of what period applies, the statute of limitations on the court order to return the $21,867 has already run. Thus, the first court order of March 11, 1997 when James Vossburg Sr. was in guardianship, standing alone, is not enforceable.

    b.  The second court order, dated December 9, 2010, served as a renewal of the matter.

The statute of limitations ran on the 1997 court order. That does not end the court's analysis. Pennsylvania courts, and other jurisdictions around the country, regularly hold that an acknowledgment of a debt starts the statute of limitations period over on the day that the new promise is breached. *Huntingdon Financial Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054 (Pa. Super. 1995). "A clear, distinct, or unequivocal acknowledgment of the debt is sufficient to take the case out of the operation of the statute. It must be an admission consistent with a promise to pay. If so, the law will imply the promise, without its having been actually or expressly made." *In re Nicolazzo's Estate*, 199 A.2d 455, 458 (Pa. 1964) *quoting Palmer v. Gillespie*, 95 Pa. 340 (Pa. 1880). Pennsylvania takes a strict view of the so-called "acknowledgement doctrine." *Gee v. CBS, Inc.*, 471 F.Supp. 600, 634 (E.D. Pa. 1979).

There are three steps necessary to toll or restore the statute of limitations period: 1) a clear, distinct, or unequivocal acknowledgment of the debt 2) a clear specification of the amount of the debt or a reference to something by which the amount might be ascertained 3) an express or implied promise to pay that has been acknowledged. *S.T. Hudson Engineers, Inc. v. Camden Hotel Development Associates*, 747 A.2d 931, 934 (Pa. Super. 2000); *see also* Lausch v. Karpinski, 2002 WL 34584735 (Pa. Com. Pl. 2002). All the factors necessary are present in this case.

> THE COURT: What – I'm having a tough time understanding how you clean that up. I mean, it's – he wrongfully took the money, it wasn't his, didn't have any right to it. The Court orders him to give it back. He didn't do it. And so you are saying it's like any debt; if you don't pursue it, you are going to lose it.
> MR HAGER: That's correct.
> THE COURT: What about him being in charge of the estate as administrator? Fiduciary duty to the other heirs? If one of them had done this, if one of them had wrongfully taken the money and converted it to their own name, would he have an obligation to go after that money?

Add. 13

MR. HAGER: Yes, he would have an obligation with the legal requirement that he obtain those funds within the statute of limitations; within the statute of limitation as applied to the debt.
October 11 Transcript of Proceedings.

There is further proof of the debt in the submitted briefs. In the Objections to Accounting and Motion for Hearing, Petitioner noted that an earlier "First and Partial Accounting indicated the total amount of the assets of James Francis Vossburg, Sr. retained by Randy Vossburg were $21,687.68." Petitioner's Brief at 4. In Respondent's Brief, he admits that this is true. Respondent's Brief at 5. Further, Petitioner also alleges that Randy Vossburg "now is refusing to return to the estate the $21,687.68 which he improperly retained in violation of prior Court Orders and in violation of his agreement to repay said amounts. Petitioner's Brief at 5. Respondent responds that there is no court order from the Estate of James F. Vossburg Sr. directing the return of funds but "avers the collectability of said funds have long since been time-barred by the applicable statute of limitations." Respondent's Brief at 5.

Based on the information before the court and the admission on the part of the Respondent during court testimony and in briefs, this debt has been renewed. There was a clear, distinct acknowledgement of the debt from 1997. The Respondent, in requesting to withdraw his objections to his father's account, clearly acknowledges the account by stating that the objections he filed would not be sustained, and acquiescing in the Court's Order stating that the Objections are withdrawn "with prejudice". Finally, there is an implied promise to pay the debt in the form of the Respondent's withdrawal of objections to the account that listed the debt as an estate asset. Respondent never denies that the debt is valid, nor does he challenge the amount of the debt. He acknowledges that he is in violation of the 1997 Court Order, but thinks he can find

Add. 14

8

sanctuary in the statute of limitations. Given his actions and admissions to the court, any statute of limitations period that may have run is now resurrected. Respondent must repay the money illegally taken.

c. Randy Vossburg is in breach of his fiduciary duty as an administrator to collect all the debts of the estate.

Under Commonwealth law, Petitioner has a number of inherent duties in his role as administrator of the estate. Once appointed administrator d.b.n.c.t.a., an individual has the power to recover the assets of that estate. 20 Pa.C.S.A. § 3326; Hansel v. Hansel, 446 A.2d 1294, 1299 (Pa. Super. 1982). An administrator in this capacity also has the power to recover the assets of the estate from a predecessor. 20 Pa.C.S.A. § 3326. Though an administrator is not responsible for his predecessor's administration of the estate, he does have certain rights and duties that he must comply with once he steps into the shoes of an estate. *Id.*

Respondent owed an undisputed amount of money dating back to the March 1997 court order. At oral argument, his counsel admitted to this fact. Thus, his father James F. Vossburg, acting as the executor of the Randy Vossburg Sr. estate, had a duty to collect the debt from the Respondent. James Vossburg, Jr. failed to do so before his death. When James F. Vossburg, Jr. died in 2010, Respondent was named administrator d.b.n.t.c.a. of the estate of James Vossburg Sr. which had an outstanding claim against the Respondent for money improperly taken from his grandfather's guardianship estate. Respondent effectively has to collect a debt against himself, which is a clear conflict of interest.

Add. 15

d. Because of this conflict of interest, Respondent must be removed as administrator of the estate.

Removal of estate executors, while within the sound discretion of the trial court, is a drastic action that should only be taken when it is evident that the estate is actually endangered and that court intervention is necessary in order to prevent further waste or mismanagement of the estate assets. See, e.g., In Re Francis Edward McGillick Foundation, 642 A.2d 467, 470 (Pa. 1994); Matter of Estate of Velott, 529 A.2d 525, 527 (Pa. Super. 1987). The Probate, Estates, and Fiduciaries Code provide that the orphans' court has the ability to remove a personal representative in the event he or she is wasting or mismanaging the estate. 20 Pa.C.S. § 3182(1). Failing to perform the duties of a personal representative and ensure effective administration of an estate are grounds for removal. Matter of Estate of Frey, 693 A.2d 1349, 1353 (Pa. Super. 1997). The "substantial reason" for removal of a personal representative must be shown from evidence presented before the court. In re Hurley's Estate, 169 A. 81, 81–82 (Pa.1933); see also In re Neafie's Estate, 49 A. 129, 130 (Pa. 1901).

The court also has the power to remove a personal representative in the event that individual fails to pay the debts of the estate. In re Miller's Estate, 107 A. 684, 685 (Pa. 1919). It is true that the removal of a fiduciary needs to be clearly shown from the evidence. Scientific Living, Inc. v. Hohensee, 270 A.2d 216, 224 (Pa. 1970). However, proof of a conflict of interest can be inferred from the circumstances of the case. In re Estate of Gadiparthi, 632 A.2d 942, 946 (Pa. Cmwlth. 1993). Nor do courts need to prove bad faith or fraudulent intent in the event a conflict of interest has been shown from the evidence presented to the court. In re Estate of Banes, 305 A.2d 723, 727 (Pa.

Circulated 10/23/2014 03:21 PM

1973); *In re Estate of Noonan*, 63 A.2d 80, 84 (Pa. 1949). Respondent's conflict of interest in failing to pay back the debt owed to the estate of his grandfather is sufficient grounds for removal, further Respondent's Account shows that the Respondent has done absolutely nothing as Administrator d.b.n.c.t.a.

Hence, the following order:

# IN THE COURT OF COMMON PLEAS
## OF CLARION COUNTY, PENNSYLVANIA
### ORPHANS' COURT DIVISION

In Re:                                                          :
                                                               :
Estate of JAMES FRANCIS VOSSBURG,                              :
SR. also known as JAMES F. VOSSBURG,                           :        sur NO. 21 O.C. 1997
SR.                                                            :
                                                               :        RECEIVED
Kathy Vossburg, Petitioner                                    :
                                                               :        JAN 1 4 2014
          v.                                                  :
                                                               :        BY_____
Randy J. Vossburg, Individually and as                        :
Administrator d.b.n.c.t.a.,of the Estate of                   :
James F. Vossburg, Sr. , Respondent                           :

## ORDER

**AND NOW**, this day, January 14, 2014:

1. Randy J. Vossburg shall repay, with proper interest, the $21,687.68 owed to the estate of James F. Vossburg Sr., within fifteen (15) days.

2. Randy J. Vossburg is hereby removed as Administrator d.b.n.c.t.a. of the Estate of James Vossburg Sr. , effective immediately.

3. The Register of Wills of Clarion County upon proper application shall appoint a successor Administrator who shall proceed to complete the estate proceedings.

BY THE COURT:

_____
PAUL H. MILLIN, S.J.

Add. 18